*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEPHEN E. SLAGA,

        Plaintiff-Appellee,

v

TOTAL HEALTH CARE, INC. and UNIVERSAL
HEALTH MANAGEMENT, CO.,

        Defendants-Appellants.

UNPUBLISHED
September 17, 2019

No. 340968
Wayne Circuit Court
LC No. 16-009942-CL

Before: STEPHENS, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

Defendants, Total Health Care, Inc. and Universal Health Management, Co., appeal by leave granted the order of the trial court denying their motion for summary disposition. We reverse and remand for entry of an order awarding summary disposition in favor of defendants.

## I. FACTS

Plaintiff, Stephen Slaga, worked at defendant Total Health Care, Inc. (THC) for 22 years as an at-will employee before his employment was terminated in June 2016. THC is a nonprofit health maintenance organization (HMO); THC uses independent healthcare insurance brokers to sell health insurance plans to employer groups. Defendant Universal Health Management, Co. (UHM) is a management company that manages and staffs THC. Plaintiff served as chief marketing officer of THC until May 12, 2016, when he was demoted, which occurred before his ultimate termination from employment.

Plaintiff testified that Randy Narowitz, chief executive officer of THC, was not satisfied with THC's financial performance and instructed him to work with the brokers to eliminate or move costly unprofitable groups to other healthcare companies. Plaintiff explained that "moving" a group meant causing the group to terminate its relationship with THC and select a different provider. According to plaintiff, brokers who successfully moved costly groups off THC's books were to be rewarded through the bonus system. In June 2016, plaintiff was directed to compile information necessary for the bonus program. Four days before the bonus checks were due, plaintiff sent Narowitz an e-mail indicating that he would no longer participate

in the bonus program because he believed it to be unethical and potentially illegal. Plaintiff testified that when confronted by Narowitz the following day, he agreed that Narowitz had not asked him to do anything illegal or immoral. Narowitz then terminated plaintiff's employment.

Plaintiff commenced this suit alleging that his termination violated public policy because defendants terminated him in retaliation for his refusal to engage in an illegal act. The trial court denied defendants' motion for summary disposition, and this Court granted defendants' application for leave to appeal the trial court's order.

## II. DISCUSSION

We review de novo a trial court's decision to grant or deny summary disposition. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When reviewing an order granting summary disposition under MCR 2.116(C)(10), we consider all documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 520; 895 NW2d 188 (2016). Summary disposition under MCR 2.116(C)(10) is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. We also review de novo issues involving the proper interpretation of statutes. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012).

Defendants argue that the trial court erred in denying their motion for summary disposition because plaintiff failed to show that the bonus system was illegal, and therefore failed to show that he was terminated for refusing to engage in an illegal act during the course of his employment. We agree.

In Michigan, employment is presumed to be "at will" and is "terminable at any time and for any—or no—reason, unless that termination was contrary to public policy." *Kimmelman v Heather Downs Mgt Ltd*, 278 Mich App 569, 572-573; 753 NW2d 265 (2008). Three grounds have been recognized in Michigan as so violative of public policy that they serve as exceptions to the general rule of at-will employment, being:

> (1) [E]xplicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty (e.g., the Civil Rights Act, MCL 37.2701; the Whistleblowers' Protection Act, MCL 15.362; the Persons With Disabilities Civil Rights Act, MCL 37.1602), (2) where the alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course of employment (e.g., refusal to falsify pollution reports; refusal to give false testimony before a legislative committee; refusal to participate in a price-fixing scheme), and (3) where the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment (e.g., retaliation for filing workers' compensation claims). [*Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 524; 854 NW2d 152 (2014), citing *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 695-696; 316 NW2d 710 (1982).]

In this case, the parties do not dispute that the first and third exceptions set forth in *Suchodolski* are inapplicable. Plaintiff does not allege that he was terminated in violation of a statutory prohibition or for acting in accordance with a legislatively enacted right or duty. Rather, plaintiff alleges that defendants terminated him in retaliation for his failure or refusal to violate the law. Plaintiff argues that reviewing the Insurance Code, MCL 500.100 *et seq.*, as a whole establishes that public policy "prohibits the Defendants' practice of paying discretionary bonuses to insurance brokers who steer unprofitable employer groups to other providers." Specifically, plaintiff alleges that the bonus system he was asked to carry out violated MCL 500.2066, and that he was discharged for refusing to participate further in that system.

However, reviewing the subsections of the Insurance Code cited by plaintiff does not support that argument. MCL 500.2066 provides in relevant part as follows:

> (1) No insurer, by itself or any other party, and no insurance agent or solicitor, personally or by any other party, transacting any kind of insurance business *shall offer, promise, allow, give*, set off or pay, directly or indirectly, any rebate of, or part of, the premium payable on the policy or on any policy, or agent's commission thereon, or earnings, profit, dividends or other benefit founded, arising, accruing or to accrue thereon, or therefrom, or any other valuable consideration *or inducement to or for insurance*, on any risk in this state now or hereafter to be written, *which is not specified in the contract of insurance*; nor shall any such insurer, agent or solicitor, personally or otherwise, offer, promise, give, sell, or purchase any stocks, bonds, securities or any dividend or profits accruing or to accrue thereon, or other thing of value whatsoever as inducement to insurance or in connection therewith which is not specified in the policy contract. [Emphasis added.]

MCL 500.2066 concerns the use of inducements not specified in a contract to induce an insured to purchase insurance. See *Lawyers Title Ins Corp v Chicago Title Ins Co*, 161 Mich App 183, 192; 409 NW2d 774 (1987). Nothing about the bonus system that is at issue in this case concerns an inducement to an insured to purchase THC's insurance policies. The disputed aspect of the bonus system did not induce employer groups to purchase insurance. Rather, this aspect of the bonus system compensated insurance brokers for moving costly customers to other insurers. Plaintiff failed to demonstrate either that THC asked him to violate MCL 500.2066, or that defendants terminated his employment for his refusal to violate this statute.

Plaintiff also suggests that THC's bonus system violated MCL 550.1004, which provides that "[a] health benefit corporation shall not attempt in any way to influence an agent in the packaging of health benefits." For purposes of this statutory provision, to influence "means to manage, direct, mandate, or give a reward or benefit to a person." MCL 550.1002(g). Packaging health benefits means "to sell health benefits simultaneously or in conjunction with the sale of insurance." MCL 550.1002(h). A health benefit is "any benefit or service lawfully provided by a health benefit corporation." MCL 550.1002(d). As a health maintenance organization, THC qualified as a health benefit corporation. MCL 550.1002(f)(*iii*).

In this case, there was no evidence to support that THC's brokers packaged health benefits with other forms of insurance, nor is there evidence that they did so as an element of the bonus program. Therefore, MCL 550.1002(g) does not support plaintiff's position, and he

-3-

cannot show that THC violated this statute, that THC requested he violate the statute, or that he was terminated for his refusal to violate the statute. Similarly, plaintiff fails to demonstrate that the Insurance Code as a whole creates a public policy against the bonus system.[1]

Plaintiff cites *Pratt v Brown Machine Co*, 855 F2d 1225, 1237-1238 (CA 6, 1988), to support his argument that defendants requested he engage in acts that violated Michigan's public policy. However, *Pratt* is not binding authority. See *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004) (noting that decisions of federal courts of appeals are not binding on this Court). Moreover, this case is dissimilar to *Pratt*. In *Pratt*, the plaintiff's employer dismissed him after he refused to drop his investigation into criminal wrongdoing. Michigan's penal code clearly evinced a legislative expression of a public policy in favor of disclosure of criminal activity, and the relevant statutory provisions set forth a public policy against compelling an employee to conceal criminal activity and against conduct that would stymie a criminal investigation. In contrast, in this case, the Insurance Code does not contain a clear legislative expression against awarding bonuses to brokers based on the broker's ability to move unprofitable customers to different providers.

We also reject plaintiff's contention that his "reasonable and good faith belief that he refused to violate the law was sufficient to establish a claim for wrongful termination in violation of public policy." Plaintiff's subjective view of the law does not establish a public policy wrongful termination claim. See *Piasecki v Hamtramck*, 249 Mich App 37; 640 NW2d 885 (2001).

In sum, there was no evidence to support plaintiff's claim that THC's bonus system violated the law or otherwise violated public policy. Plaintiff failed to identify any statute, regulation, constitutional provision, or common-law theory to demonstrate that the bonus system was unlawful or otherwise violated public policy. As such, plaintiff's public policy claim failed as a matter of law, and the trial court erred in denying defendants' motion for summary disposition. See MCR 2.116(C)(10).

---

[1] Plaintiff appears to concede that he cannot show that THC violated any specific statutory provision, but argues that the Insurance Code, MCL 500.100 *et seq*., as a whole establishes that public policy "prohibits the Defendants' practice of paying discretionary bonuses to insurance brokers who steer unprofitable employer groups to other providers." But public policy does not exist apart from law. Our Supreme Court has explained that public policies are what "have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law. The public policy of Michigan is *not* merely the equivalent of the personal preferences of a majority of this Court; rather, such a policy must ultimately be clearly rooted in the law. There is no other proper means of ascertaining what constitutes our public policy." *Terrien v Zwit*, 467 Mich 56, 66-67; 648 NW2d 602 (2002) (citation omitted).

Accordingly, reversal and remand for entry of an order awarding summary disposition in favor of defendants is warranted.

Reversed and remanded.  We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola
/s/ Anica Letica